## EDWARD L. HILL *v.* LOUIS L. DEROCHEMONT.

48  87<br>67  584

In a lease of a farm for two years it was stipulated that for every ton of hay produced and not consumed on the farm, the lessee should leave, or haul on to, and use on, the same, one extra half cord of good dressing ; and at the expiration should leave on the farm, dressing in value equal to what he found there at the commencement of the lease, and that he should carry on the farm during the term in a good husbandlike manner, and would not commit strip or waste :

Under this lease it was held that the tenant was to use on the farm, or leave there for use, all the manure made there in the usual course of husbandry, together with what he was to bring on for hay sold off; and that he was not entitled to sell or carry off any of such manure, notwithstanding he might leave at the end of the term as much as he found there.

*Held*, also, that the tenant was not at liberty to carry off manure made from eel grass gathered on the farm, and mixed with manure made by the cattle and pigs on the farm.

ACTION, trespass. For the purposes of this case the parties agree to the following statement of facts :

The plaintiff leased to the defendant a farm in Newington for two years. The defendant continued his occupancy, under an extension of said lease, the further term of six years.

At the time of the original letting, the plaintiff had upon the farm a large quantity of manure lying in heaps and in the yards. In the lease under which the defendant had possession of said farm were the following agreements, viz : "And for every ton of hay produced and not consumed on the farm, said DeRochemont is to leave, or to haul on to, and use on, the same, one extra half cord of good dressing.  *  *  *
At the expiration of the lease said DeRochemont shall leave on the farm, dressing in value equal to the dressing he shall find on the farm at the commencement of this lease.  *  *  *  *  *  And that he will carry on the same during the said term in a good and husbandlike manner, and will not commit strip or waste."

At the time of the giving of said lease it was agreed that the manure of the plaintiff should be appraised to the defendant; and the manure upon the place when the defendant took possession was accordingly appraised at ten cords, and it is now agreed that it was of that amount.

The said DeRochemont has kept upon said farm a large stock of cattle and pigs, and just before the expiration of his lease, there was upon said farm a large quantity of manure made by said cattle and pigs, with which was mixed eel-grass, gathered from the banks of the river upon which said farm bordered.

The said cattle and pigs have been fed upon hay cut upon the farm, and corn and other grains bought and carried thereon by the defendant.

As late as June, 1867, all the manure on said farm was spread thereon, and this manure has been made as aforesaid since that date.

The defendant has sold from said farm since that date twenty-two tons of hay, and it is agreed that he has hauled out in a pile upon said farm from the yards on said farm a heap of manure containing ten cords, and has hauled on to said farm a quantity equal to one half of a cord for every ton of hay hauled or sold off of said farm ; but the remainder of said manure he has hauled away and converted to his own use.

The parties agree, for the purposes of this case, that the court shall give a legal construction to said lease, and as to the rights of the parties therein; and that if the plaintiff is entitled to recover any sum of money for the manure so carried off, or any quantity of manure, in specie, that he may recover under this form of action, any and every thing he would be entitled to recover in any other form of action.

*Goodall*, for plaintiff.

*Frink*, for defendant.

BELLOWS, J.   It must be regarded as settled in New Hampshire that manure made upon a farm in the ordinary course of husbandry, cannot be carried away by the out-going tenant, unless he is authorized to do so by special contract.   From the stipulation to carry on the farm in a husbandlike manner is implied the obligation to spend the hay and other fodder upon it, as the means of preserving and continuing its capacity of production; and upon this ground the grant of the farm will include as an incident the manure so made.

On both these points the case of *Perry* v. *Carr*, 44 N. H. 118, 120, and the authorities there cited, are explicit and satisfactory. So in *Sawyer* v. *Twiss*, 26 N. H. 345, it is held that manure made in the ordinary course of husbandry is part of the real estate, and cannot be attached as personal property.   The only question, then, is, whether by the lease between these parties the obligation of the tenant in this respect is limited.

The tenant there stipulates that he will carry on the farm in a good and husbandlike manner; that, for every ton of hay produced and not consumed on the farm, he is to leave, or to haul on, and use on, the same, one extra half cord of good dressing; and at the expiration of the lease shall leave on the farm, dressing in value equal to the dressing he shall find on the farm at the commencement of the lease.

The stipulation to bring on a half a cord of manure for every ton of hay carried off, was very clearly designed to give the tenant the privilege of selling some of the hay upon bringing on to the farm as much manure as that hay would have produced; *but not to authorize him to sell off the manure that was made from the hay produced and consumed there*.   A construction that should allow the tenant to sell the manure actually made there in the usual course of husbandry, and at the same time require him to bring on other manure for the hay sold off, would not only find no countenance in any known usage, but would be unreasonable and absurd.

Our opinion, therefore, is, that there is nothing in this provision to release the tenant from the ordinary obligation to use, or leave to be used, on the farm, the manure made in the ordinary course of husbandry, excepting the simple privilege of selling off some of the hay and bringing on an equivalent in manure.

In respect to the other provision requiring the tenant to leave as much dressing as he found, there is more difficulty, the question being, whether

he was bound to leave all that was made in the usual course of husbandry even if it exceeded the quantity he found there ; or whether he was bound no further than to leave that quantity with the right to sell off the excess if there was any.

Upon a careful consideration of the terms used, we are of the opinion that the tenant was bound to leave all the manure made on that farm in the usual course of husbandry, and not already used there ; and that his stipulation that he would leave as much as he found there at the commencement of the lease, was not designed to limit his obligation to that quantity, but to require him to leave at least that quantity, even if the amount so made was less.

The obligation to use on the farm during the term, all the manure that was made in the usual course of husbandry, together with that which was brought on for the hay sold by the tenant, is, as we think, quite clear. Anything else would be bad husbandry ; and there is nothing, we think, to release the tenant from that duty. The terms ought, indeed, to be quite explicit to warrant the construction that the tenant at the end of the term was at liberty to sell off manure made in the usual course of husbandry.

Upon the defendant's construction, although he was bound to bring on to the farm an equivalent for the hay sold off, yet he was at liberty to sell off whatever excess there might be beyond the quantity of manure he found there. Such a construction, we think, is too unreasonable to be adopted ; for the purpose to require all the hay to be consumed on the place except that for which an equivalent in manure was to be made, is very plainly to be inferred from the language of the parties ; and in view of this fact, and also of the agreement implied by law in the absence of any express stipulation, it would certainly require strong language to justify a construction that would make wholly useless and nugatory the obligation to expend the hay on the farm, by permitting the tenant to sell off the manure when it was made there.

If the defendant's construction is to be adopted, he was only bound at the end of the two years to leave as much manure as he found there, and in the meantime while the term was going on he might sell all he made.

The ingenious argument of the defendant's counsel is based largely upon the assumption that all the manure found upon the farm by the tenant, and made by him during the term, was his property ; and for this position he relies apparently upon the admission of the plaintiff's counsel, that, by the stipulation in the lease, the tenant became the purchaser of the manure on the farm at the commencement of the term.

We do not, however, so regard it. The tenant undoubtedly acquired an interest in that manure, so that he might use it upon that farm, but it was as a part of the real estate merely, and not as personal property which he might sell off, nor was it liable to be attached and removed as personal property for the debts of the tenant. *Daniels* v. *Pond*, 21 Pick. 367. The obligation to leave at least as much as he found made it necessary to appraise, or in some way to fix the amount ; but we see nothing that indicates any purpose to vest in the tenant the title to this

manure as personal property, or to do anything more than to lease it to him, giving him the right to use it in the ordinary way in the cultivation and improvement of the farm ; and so it is, we think, in respect to the manure made by the tenant during the term.

The vesting of the title to the manure then on the farm, and that might be made there during the term, in the tenant, would be so extraordinary as to require something more than doubtful expressions to establish such a purpose. The claim here made by the tenant is much like that of the tenant who carries on a farm at the halves, and there it is held that the share of the landlord does not vest in the tenant at all. *Moulton* v. *Robinson*, 27 N. H. 550, and see *Daniels* v. *Pond*, 21 Pick. 367.

It is urged for the defendant that some of the manure was made from other materials than the products of the farm. On this point, however, enough is not stated to enable us to express an opinion that would be of much service in any further inquiries. If any of the manure was made out of the ordinary course of husbandry, or in a manner substantially like making it in a livery stable, the tenant would be entitled to it if it could be distinguished ; *Needham* v. *Allison*, 24 N. H. 355, and *Plummer* v. *Plummer*, 30 N. H. 558 ; but we are not prepared to say that manure made from eel grass gathered from the banks of the river on which the farm lies, would stand on this ground. It would seem rather that this material is to be regarded not as a product of the farm to be sold off by the tenant, like grain or fruit, but as a fertilizer, like muck or sea weed, which the tenant might lawfully use to enrich the land ; and we think his interest in it is so qualified, and not absolute.

Our opinion, therefore, is, that the plaintiff is entitled to recover.